A93A0857. GEARIN v. THE STATE.
A93A0858. QUINN v. THE STATE.
(432 SE2d 818)

BEASLEY, Presiding Judge.

Earnest Gearin and Roger Quinn were convicted of one count of burglary. OCGA § 16-7-1 (a). Their motions for new trial were denied.

Gearin, Quinn, and his brother, Oliver Quinn, were indicted with two others on eight counts of burglary. Their pretrial motions for severance of the eight counts of burglary were denied. Their motions for complete severance of parties were denied as well, but severance of Gearin and the Quinns from the remaining co-indictees was granted, and Gearin and the Quinns were tried jointly in a separate trial. At the close of the State's evidence, the motions of Gearin and the Quinns for directed verdicts of acquittal were granted as to seven of the eight counts. The jury returned a verdict of guilty as to the remaining count. Oliver Quinn has withdrawn his appeal, and we have consolidated the appeals of Gearin and Roger Quinn for disposition in this opinion.

1. Both appellants enumerate the general grounds.

The evidence showed that on September 19, 1990, a home in

Cherokee County was burglarized during daylight hours. The back door was kicked in and numerous items were taken, including a pillowcase. A neighbor saw a blue and cream custom van parked in the driveway of the burglarized house at about 2:00 p.m. She testified that the van remained in the driveway for approximately 15 minutes with the motor running.

The next day, a Rockdale County sheriff's deputy observed a van meeting that description in a driveway near his home. Having been alerted to be on the lookout for such a van, the deputy parked nearby to observe it. He saw the driver, whom he identified at trial as Gearin, exit the van and start toward the house, and testified they made eye contact. He then observed the driver rap on the back door of the house twice and return to the van before sufficient time had elapsed for anyone to answer the knock. The deputy's suspicions were further heightened by this conduct, and he followed the van and called for assistance. A high-speed chase ensued involving police from several jurisdictions and a helicopter, and the van was finally stopped about 30 minutes later. Gearin was the driver and the Quinns were passengers. Also in the van were a gun inside a picnic cooler plus several items identified by the victim as being from the previous day's burglary in Cherokee County.

Certified copies of appellants' guilty pleas to a previous burglary in Rockdale County were introduced into evidence as a similar transaction. The victim of that burglary testified that she had come home a little after 2:00 p.m. to find three men in her garage holding pillowcases stuffed with items from her home. The back door had been kicked in. She identified from a photograph the blue and cream van in which Gearin and the Quinns had been arrested as the van that had been in her driveway with the doors opened. She had been so shocked that she kept staring at the men until one of them, whom she identified as Roger Quinn, pulled a gun and told her to leave.

"Unexplained recent possession of stolen goods permits a jury to infer that the accused committed the theft." (Citation and punctuation omitted.) *Faust v. State,* 189 Ga. App. 426, 427 (1) (375 SE2d 889) (1988). Moreover, evidence of flight "points to the question of guilt in a circumstantial manner," *Renner v. State,* 260 Ga. 515, 517 (3) (b) (397 SE2d 683) (1990) (although a court no longer may charge the jury on flight. Id. at 518 (3) (b)). The evidence, although circumstantial, was sufficient to enable a rational trier of fact to find appellants guilty beyond a reasonable doubt of the offense of burglary. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The State called as a witness an original co-indictee whose trial had been severed. The prosecutor informed the court that extensive discussions had been held with the witness with regard to his entering a plea, and that the State had been under the impression

that the witness would testify voluntarily. The discussions, however, had been fruitless. The witness refused to testify, even after the court granted him use and derivative-use immunity, and he was held in contempt. See OCGA § 24-9-28; *Corson v. Hames,* 239 Ga. 534 (1) (238 SE2d 75) (1977). Because the prosecution had expected this witness to connect appellants with all eight burglaries, his refusal to testify left the prosecution without evidence satisfactorily linking appellants to most of the burglaries, about which evidence had previously been admitted. Following the witness' refusal to testify, appellants' motions for a directed verdict of acquittal were granted as to seven of the eight counts.

Appellants then moved for mistrial on the ground that the prosecution's evidence of their guilt on the one remaining burglary count was weak; that throughout the prosecution's case-in-chief the jury had heard extensive testimony regarding seven burglaries of which appellants had now been acquitted, thereby so inalterably prejudicing the jury's consideration of the remaining count that any attempt at curative instruction would be ineffective. The court gave careful consideration to the arguments for mistrial, even reserving ruling for some time on the chance that the witness would reconsider his refusal to testify. Ultimately, however, the witness did not change his mind, and the court denied the motion for mistrial. Although conceding it was a close question, the court elected to give the jury curative instructions and proceed with the trial on the remaining count, finding that because there was admissible evidence that appellants had pled guilty to one similar transaction, the inadmissible evidence heard by the jury on the seven burglary counts on which the directed verdict had been granted had been "somewhat redundant."

The curative instruction given cautioned the jurors to disregard all evidence except that relating to the one count remaining. The instruction was repeated in the court's closing charge, and the motions for mistrial properly renewed. After the jury had returned its guilty verdict, the court polled the jury sua sponte, inquiring of each juror whether they recalled and understood the curative instruction given and whether each had been able to follow that instruction and disregard the extraneous evidence. The jurors all responded that they had understood the instruction and had been able to follow it.

Both appellants contend the court erred by denying their motions for mistrial because the evidence heard by the jury regarding seven other burglaries, which was legally irrelevant, was so extensive compared with the weak circumstantial evidence regarding the one remaining count that, despite the court's curative instruction, it pervaded the jury's consideration of the only count before them and resulted in the denial of a fair and impartial trial.

"The question of whether or not to grant a mistrial lies within

the sound discretion of the trial court. That decision will not be reversed on appeal absent an abuse of discretion. [Cit.]" *Roberts v. State,* 242 Ga. 634, 636 (4) (250 SE2d 482) (1978). It is clear from reading the transcript that the court used care in fashioning a curative instruction, in making sure it was understood, and in attempting to assure that it had been observed. Nevertheless, the instruction was not that defendants had not committed those crimes but only that the evidence had not been "adequately connected up to these defendants." Moreover, the court itself noted several times that the ruling on the mistrial was a close one, and that the motion was "appropriate" and "valid."

The reason is apparent. "[W]e have . . . long adhered to the rule that where an accused is on trial for the commission of a crime: 'proof of a distinct, independent, and separate offense is never admissible, unless there is some logical connection between the two, from which it can be said that proof of the one tends to establish the other. . . . [Cit.]' The rationale for [this] rule is that evidence of an independent offense or act committed by the accused is highly and inherently prejudicial, raising, as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue. An accused is: 'entitled to be tried for the offense charged in the indictment, independently of any other offense not connected with the transaction upon which the indictment was based. [Cit.]' " *Williams v. State,* 261 Ga. 640, 641-642 (2) (a) (409 SE2d 649) (1991).

Because of this principle, before evidence of independent crimes may be introduced into evidence, a hearing must be held pursuant to USCR 31.3 (B) and the State must make three affirmative showings, the second of which is that "there is sufficient evidence to establish that the accused committed the independent offense or act." *Williams,* supra at 642 (2) (b). The evidence heard by the jury regarding the seven other burglaries failed to meet even the threshold criteria for similar crimes, as there was *no* evidence to establish that appellants committed those burglaries.

In *Hess v. State,* 132 Ga. App. 26, 29-31 (3) (207 SE2d 580) (1974), the victim of a burglary testified concerning a long list of items taken from her home, only one of which could be connected to the defendants. This court held that allowing the victim to testify about stolen goods which could not be connected to the defendants was unfairly prejudicial, and a new trial was required. In this case, the irrelevant evidence heard by the jury about crimes that remained unconnected to appellants was far more prejudicial.

The general rule that a curative instruction will cure the error caused by having admitted evidence later ruled inadmissible is sub-

ject to exceptions when "the illegal evidence [has] worked such harm or injury to the accused as to render it probable that the subsequent withdrawal did not heal the injury inflicted by its improper admission." *Campbell v. State,* 155 Ga. 127, 128 (1) (116 SE 807) (1922) (Hines, J., dissenting); see *McDonald v. State of Ga.,* 72 Ga. 55 (1) (1884). "Jurors, like other human beings, are unconsciously too much affected by strong mental impressions for these impressions to be nicely segregated from the mass of evidence by a mere direction that these impressions are to be obliterated, though they be told, even by the judge, that the object which created those impressions has been removed and is now out of their sight." *Campbell,* supra at 132 (Russell, C. J., concurring specially). As we find the improperly admitted evidence so abundant and strong so as to render it virtually impossible for the jurors to eliminate it from their minds completely while deliberating appellants' guilt of the one burglary, we are constrained to conclude that the trial court erred in denying appellants' motion for mistrial.

3. Both appellants contend that evidence of their previous burglary conviction should not have been admitted as a similar transaction, because it was insufficiently similar to the crime charged in that a gun was held on the victim. However, "[t]here is no requirement that . . . the 'other transaction' must be identical in every aspect." (Emphasis deleted.) *Faison v. State,* 199 Ga. App. 447, 448 (405 SE2d 277) (1991). The prior burglary involved a residence, was committed during daylight hours, was accomplished by entering the home by kicking in a door, included a pillowcase among the stolen items, and involved a blue and cream van and a gun. The prior offense was sufficiently similar to the Cherokee burglary of which appellants were accused so that proof of the Rockdale burglary tended to prove the Cherokee burglary. *Crews v. State,* 185 Ga. App. 494, 495 (364 SE2d 625) (1988). It was not error to admit this evidence as a similar transaction.

4. The Supreme Court has noted that the better practice in charging the jury on reasonable doubt is to omit the phrase "moral and reasonable certainty" found in OCGA § 24-4-3, since "[w]hat is perceived as 'moral' may differ from group to group, from class to class, and from individual to individual," and the equivocal nature of the term "reasonable" might conceivably lead a juror to apply to the evidence a lesser standard of proof than beyond a reasonable doubt. *Vance v. State,* 262 Ga. 236, 237-238, n. 5 (416 SE2d 516) (1992). Accordingly, at retrial, this phrase should not be used.

5. Appellants' remaining enumerations of error are rendered moot by our holding in Division 2, as they are unlikely to recur at retrial.

*Judgments reversed and remanded. McMurray, P. J., and*

*Cooper, J., concur.*

DECIDED JUNE 8, 1993.

*Bishop & McElyea, Barry W. Bishop,* for appellant (case no. A93A0857).

*Howard & Delaney, Stephen A. Delaney, McVay & Stubbs, Robert M. Dyer,* for appellant (case no. A93A0858).

*Garry T. Moss, District Attorney, Paul F. Carden, Assistant District Attorney,* for appellee.